United States District Court
Southern District of Texas
**ENTERED**
March 27, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| NEW PELICAN CHARTERS, LLC, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:18-CV-00086 |
| § | |
| UNKNOWN CLAIMANTS, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff New Pelican Charters, LLC ("New Pelican"), initiated this admiralty action for exoneration from or limitation of liability resulting from an allision that occurred on July 21, 2017. Steven Wayne Gilliam and Calvin Sanders ("Claimants") submitted an amended claim against New Pelican and Deep Sea Fishing, Inc. ("Deep Sea")[1] alleging that they had suffered injuries while onboard the M/V New Pelican following an allision with an anchored boat. (D.E. 27). Deep Sea moved to dismiss or, alternatively, for summary judgment. (D.E. 29). Claimants filed a response, and Deep Sea filed a reply. (D.E. 31, 35). As discussed further below, it is recommended that Deep Sea's construed motion for summary judgment be denied.

---

[1] New Pelican was the owner of the M/V New Pelican beginning in June 2017. (D.E. 29-4 at 2-4). Before that, the boat was owned by Deep Sea. (*Id.* at 4-5). Through an oral agreement, Deep Sea remained in charge of collecting the money, paying the bills, hiring the crew, and maintaining the boat. (*Id.* at 6-9). Deep Sea was the sole owner of New Pelican, and Kelly Owens was the sole shareholder of Deep Sea. (*Id.* at 10).

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1333 and Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Venue is proper in this Court because the M/V New Pelican is located in Port Aransas, Texas, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. §§ 1391, 124(b)(6).

## II. BACKGROUND

### a. Complaint and Claims

New Pelican filed a verified complaint and petition for exoneration from or limitation of liability for any claims arising from an allision that occurred on July 21, 2017. (D.E. 1 at 1-2). New Pelican seeks exoneration from liability or, alternatively, limitation of liability under 46 U.S.C. § 30511. (*Id.* at 3-4).

Claimants filed an amended claim against New Pelican and Deep Sea for injuries they suffered during the allision. (D.E. 27 at 1-17). They allege that Deep Sea knew or should have known of the unseaworthiness of the M/V New Pelican and that this knowledge was imputed to New Pelican. (*Id.* at 10). They claim that Deep Sea's responsibility is based on the negligent actions of its crew in the operation, inspection, maintenance, and repair of the boat. (*Id.*). On July 21, 2017, Claimants participated in an off-shore fishing trip on the M/V New Pelican. (*Id.* at 11). They had previously participated in fishing trips with Deep Sea. (*Id.*). The M/V New Pelican traveled several miles offshore and attempted to position itself downstream of an anchored shrimping

vessel that was cleaning its catch. (*Id.* at 12). However, the captain positioned the M/V New Pelican too close to the shrimping vessel, leaving no room for error. The throttle and gear shifter mechanism malfunctioned on the port side engine, which resulted in an allision with the shrimping vessel. (*Id.*).

Claimants further allege that, at the time of the incident, they were in danger of being struck by the fishing rigging and net doors on the shrimping vessel. (*Id.* at 13). In attempting to move to a safer area on the boat, both men fell and injured their backs. (*Id.*). Gilliam visited a doctor and was told that he was in need of surgical repair of spinal injuries. (*Id.* at 13-14). Sanders had already undergone two back surgeries at the time of the incident and was disabled. (*Id.* at 14). He suffered two new, inoperable herniated discs in his back. Doctors also recommended that he have a surgical procedure to relieve the symptoms of his back injury. (*Id.*). Claimants seek damages for medical expenses, pain and suffering, mental anguish, physical impairment, and loss of wages or wage-earning capacity. (*Id.* at 14-15).

  **b.** **Summary Judgment Evidence**

Before boarding the boat, Claimants both signed forms that stated: "I will not hold [Deep Sea or the M/V New Pelican] or their employees, agents or other associated personnel responsible if I am injured as a result of any problem[s] (medical, accidental, or otherwise) which occur while on the boat or otherwise participating in the trip." (D.E. 29-2 at 1-2). The forms also indicated that Deep Sea operated under and practiced seamanship in accordance with the United States Coast Guard regulations. (*Id.*).

In a deposition, Gilliam testified that he had signed the waiver form at Deep Sea's headquarters before getting on the boat. (D.E. 29-3 at 3). He remembered reading the form and signing it. (*Id.* at 4). If he did not want to sign the form, he did not have to, and he could have found a different fishing charter boat instead. (*Id.* at 5). He signed a similar form on the two previous trips he took with Deep Sea. (D.E. 35-1 at 3). Gilliam also stated in an affidavit that he relied on Deep Sea to follow the operational rules for inspecting the boat and maintaining its seaworthiness, which he did not believe was done. (D.E. 31-3 at 1-2).

In a deposition, Sanders testified that when they first arrived at Deep Sea's headquarters, they bought tickets and signed the waiver forms, which were similar to what they had signed on previous trips with Deep Sea. (D.E. 29-5 at 2-3). He was given the opportunity to read the document before signing it and was not required to sign the form. (*Id.* at 5-6). Sanders also stated in an affidavit that he relied on Deep Sea to follow the operational rules for inspecting the boat and maintaining its seaworthiness, which he did not believe was done. (D.E. 31-4 at 1-2).

Jonathan McIntyre, the captain of the M/V New Pelican at the time of the allision, testified in a deposition that he first noticed that something was wrong when he tried to stop the boat to perform a turn. (D.E. 29-6 at 2-3). Instead of stopping, the boat continued moving forwards towards the anchored shrimping boat. (*Id.* at 3). McIntyre attempted to avoid the allision, and although the boat made contact with the shrimping boat, it was moving very slowly at the time. (*Id.* at 4-5).

Phillip Odom, a boat accident investigation expert, stated in an affidavit that he reviewed the allision on behalf of Claimants. (D.E. 31-5 at 1). As part of his investigation, he: (1) inspected the M/V New Pelican and reviewed photographs; (2) reviewed the testimony of Claimants, McIntyre, and other employees of Deep Sea; and (3) reviewed various regulations that the Coast Guard uses to control the operation of vessels on the sea. (*Id.* at 1-2). Odom stated that the M/V New Pelican had a mechanical issue caused by a nut coming off the shifter for the port engine. (*Id.* at 2). However, McIntyre was already too close to the shrimping boat when the malfunction occurred and had not left enough margin of error. (*Id.* at 2-3). This mistake was a violation of the Federal International Regulations for Preventing Collisions at Sea, which all vessels are obligated to follow. (*Id.* at 3). Moreover, vessel operators are required to maintain their vessels in a seaworthy condition, including maintaining and inspecting the controls. Had the proper fasteners been used for the shifter mechanism, or had a simple inspection been done, then the mechanical failure would not have occurred. Odom was of the opinion that the deficient transmission linkage made the boat unseaworthy. (*Id.*). Odom also completed a more detailed report that reached the same conclusions. (D.E. 35-2 at 1-9). In the report, he indicated that he had also reviewed the Coast Guard report on the incident. (*Id.* at 1).

### III. DISCUSSION

#### a. Summary Judgment Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). If a motion filed under Rule 12(b)(6) presents matters outside of the pleadings, the Court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Here, because the Court must consider matters outside of the pleadings, Deep Sea's motion is one for summary judgment.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing

that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

      **b.**    **Liability Waiver Forms**

In its motion for summary judgment, Deep Sea argues that Claimants signed waivers releasing Deep Sea from any liability before they boarded the boat. (D.E. 29-1 at 2-4). Deep Sea argues that, although the waiver did not specifically mention negligence, the broad language waived claims regarding "any problem." (*Id.* at 9). Deep Sea contends that this language shows that the intent of the parties clearly and unequivocally was to exempt it from liability from any problem that arose during the trip, including negligence. (*Id.*). Further, Deep Sea argues that it did not have excessive bargaining power over Claimants because they were free to refuse to sign the waivers and find a different fishing service. (*Id.* at 9-10).

Claimants first respond that the waiver form did not clearly and unequivocally provide a waiver for Deep Sea's own negligence. (D.E. 31 at 4-5). They argue that the form never mentions the word "negligence" or otherwise indicates that it includes claims of negligence, which renders it insufficient to bar the claim that Deep Sea was negligent. (*Id.* at 5-7). Second, Claimants argue that the waivers are unenforceable contracts

7

because Deep Sea breached its promise to operate in accordance with the United States Coast Guard Regulations. (*Id.* at 9-10). Accordingly, they argue that the waivers lacked consideration. (*Id.* at 10).

Deep Sea replies that the language of the waiver form speaks for itself and that Claimants failed to identify any alternative interpretation. (D.E. 35 at 1-2). Deep Sea contends that the waivers are sufficient despite the fact that they do not mention negligence. (*Id.* at 3). Finally, Deep Sea argues that the waivers were supported by consideration because Claimants were able to go on the fishing trip. (*Id.* at 3-4). Regardless, Deep Sea asserts that Claimants failed to show that it violated any Coast Guard regulations because Odom's opinions were based on the Coast Guard's investigatory reports, which are inadmissible. (*Id.* at 4-5).

Generally, applying maritime law, a contract that provides for indemnification for or release of a party's own negligence must be clearly and unequivocally expressed. *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984). A statement releasing a party from "any and all claims" is insufficient, standing alone, to include the party's own negligence. *Id.* However, an indemnity provision need not explicitly state that it includes a party's own negligence. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540-41 (5th Cir. 1986). Instead, a duty to indemnify will exist if the language of the contract reasonably indicates that the parties intended to include the indemnitee's own negligence as part of the agreement. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). In *Theriot*, the Fifth Circuit held that an

agreement indemnifying a party "without limit and without regard to the cause or causes thereof or the negligence of any party" clearly and unequivocally included indemnification for the indemnitee's own negligence. *Theriot*, 783 F.2d at 540. In contrast, the Fifth Circuit concluded that a similarly worded agreement that omitted the "any party" language did not clearly and unequivocally release such claims because it did not specify whose negligence the agreement covered. *Id.* at 540-41.

    Here, Claimants do not dispute that they willingly signed the waiver forms. (*See* D.E. 31 at 4-5). Thus, the issue on summary judgment is whether the forms were legally sufficient to waive Claimants' right to bring suit against Deep Sea. They were not. First, although not required to do so, the waiver forms do not explicitly provide that Claimants were waiving their ability to sue Deep Sea in the event that they were injured due to Deep Sea's negligence. (D.E. 29-2 at 1-2). Second, the plain language of the forms does not otherwise indicate that the parties intended to include Deep Sea's own negligence as part of the agreement. *See Corbitt*, 654 F.2d at 333. The language of the forms, which purport to cover "any problem[s] (medical, accidental, or otherwise) which occur while on the boat or otherwise participating in the trip," is equivalent to an indemnity agreement covering "any and all claims." (*See* D.E. 29-2 at 1-2). Such language, standing alone, is insufficient to include negligence. *Seal Offshore*, 736 F.2d at 1081. Further, unlike the agreement that the Fifth Circuit found to be sufficient in *Theriot*, Deep Sea's forms did not specify whose negligence Claimants would be required to indemnify. *Theriot*, 783 F.2d at 540-41. Again, contractual language that merely includes "all"

injuries is insufficient under binding Fifth Circuit precedent. *Seal Offshore*, 736 F.2d at 1081. Accordingly, because the waiver forms do not clearly and unequivocally provide for indemnification for or release of Deep Sea's own negligence, Claimants have not waived their ability to sue Deep Sea for their injuries.

Because the waiver forms are legally insufficient to release Deep Sea of its own negligence, it is unnecessary to determine whether they were supported by consideration.

## IV.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Deep Sea's motion for summary judgment (D.E. 29) be DENIED.

Respectfully submitted this 27th day of March, 2019.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).