**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| NEW PELICAN CHARTERS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:18-CV-00086 |
| | § | |
| UNKNOWN CLAIMANTS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The Court is in receipt of Deep Sea Fishing, Inc's. ("Deep Sea Fishing") Complaint and Motion to Dismiss Pursuant to FRCP 12(b)(6), or in the Alternative, Motion for Summary Judgment, Dkt. Nos. 1, 29; Deep Sea Fishing's Reply Memorandum in support of its motion, Dkt. No. 35; Steve Gilliam and Calvin Sanders' ("Claimants") First Amended Answer and Response to the Motion for Summary Judgment, Dkt. Nos. 27, 31; the Magistrate Judge's Memorandum and Recommendation ("M&R"), Dkt. No. 36; Deep Sea Fishing's Objections to the M&R, Dkt. No. 38; and Claimants' Response to Deep Sea Fishing's Objections to the M&R, Dkt. No. 39.

### I.    BACKGROUND

The Magistrate Judge summarized the background in the M&R. Dkt. No 36:

I. JURISDICTION
This Court has jurisdiction pursuant to 28 U.S.C. § 1333 and Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Venue is proper in this Court because the M/V New Pelican is located in Port Aransas, Texas, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. §§ 1391, 124(b)(6).
II. BACKGROUND
a. Complaint and Claims
New Pelican filed a verified complaint and petition for exoneration from or limitation of liability for any claims arising from an allision that occurred on July 21, 2017. (D.E. 1 at 1-2). New Pelican seeks exoneration from liability or, alternatively, limitation of liability under 46 U.S.C. § 30511. (Id. at 3-4). Claimants filed an amended claim against New Pelican and Deep Sea for injuries they suffered during the allision. (D.E. 27 at 1-17). They allege that

Deep Sea knew or should have known of the unseaworthiness of the M/V New Pelican and that this knowledge was imputed to New Pelican. (Id. at 10). They claim that Deep Sea's responsibility is based on the negligent actions of its crew in the operation, inspection, maintenance, and repair of the boat. (Id.). On July 21, 2017, Claimants participated in an off-shore fishing trip on the M/V New Pelican. (Id. at 11). They had previously participated in fishing trips with Deep Sea. (Id.). The M/V New Pelican traveled several miles offshore and attempted to position itself downstream of an anchored shrimping vessel that was cleaning its catch. (Id. at 12). However, the captain positioned the M/V New Pelican too close to the shrimping vessel, leaving no room for error. The throttle and gear shifter mechanism malfunctioned on the port side engine, which resulted in an allision with the shrimping vessel. (Id.).

Claimants further allege that, at the time of the incident, they were in danger of being struck by the fishing rigging and net doors on the shrimping vessel. (*Id.* at 13). In attempting to move to a safer area on the boat, both men fell and injured their backs. (*Id.*). Gilliam visited a doctor and was told that he was in need of surgical repair of spinal injuries. (*Id.* at 13-14). Sanders had already undergone two back surgeries at the time of the incident and was disabled. (Id. at 14). He suffered two new, inoperable herniated discs in his back. Doctors also recommended that he have a surgical procedure to relieve the symptoms of his back injury. (*Id.*). Claimants seek damages for medical expenses, pain and suffering, mental anguish, physical impairment, and loss of wages or wage-earning capacity. (*Id.* at 14-15).

b. Summary Judgment Evidence

Before boarding the boat, Claimants both signed forms that stated: "I will not hold [Deep Sea or the M/V New Pelican] or their employees, agents or other associated personnel responsible if I am injured as a result of any problem[s] (medical, accidental, or otherwise) which occur while on the boat or otherwise participating in the trip." (D.E. 29-2 at 1-2). The forms also indicated that Deep Sea operated under and practiced seamanship in accordance with the United States Coast Guard regulations. (*Id.*).

In a deposition, Gilliam testified that he had signed the waiver form at Deep Sea's headquarters before getting on the boat. (D.E. 29-3 at 3). He remembered reading the form and signing it. (*Id.* at 4). If he did not want to sign the form, he did not have to, and he could have found a different fishing charter boat instead. (*Id.* at 5). He signed a similar form on the two previous trips he took with Deep Sea. (D.E. 35-1 at 3). Gilliam also stated in an affidavit that he relied on Deep Sea to follow the operational rules for inspecting the boat and maintaining its seaworthiness, which he did not believe was done. (D.E. 31-3 at 1-2).

In a deposition, Sanders testified that when they first arrived at Deep Sea's headquarters, they bought tickets and signed the waiver forms, which were similar to what they had signed on previous trips with Deep Sea. (D.E. 29-5

at 2-3). He was given the opportunity to read the document before signing it and was not required to sign the form. (*Id.* at 5-6). Sanders also stated in an affidavit that he relied on Deep Sea to follow the operational rules for inspecting the boat and maintaining its seaworthiness, which he did not believe was done. (D.E. 31-4 at 1-2).

Jonathan McIntyre, the captain of the M/V New Pelican at the time of the allision, testified in a deposition that he first noticed that something was wrong when he tried to stop the boat to perform a turn. (D.E. 29-6 at 2-3). Instead of stopping, the boat continued moving forwards towards the anchored shrimping boat. (*Id.* at 3). McIntyre attempted to avoid the allision, and although the boat made contact with the shrimping boat, it was moving very slowly at the time. (*Id.* at 4-5).

Phillip Odom, a boat accident investigation expert, stated in an affidavit that he reviewed the allision on behalf of Claimants. (D.E. 31-5 at 1). As part of his investigation, he: (1) inspected the M/V New Pelican and reviewed photographs; (2) reviewed the testimony of Claimants, McIntyre, and other employees of Deep Sea; and (3) reviewed various regulations that the Coast Guard uses to control the operation of vessels on the sea. (*Id.* at 1-2). Odom stated that the M/V New Pelican had a mechanical issue caused by a nut coming off the shifter for the port engine. (*Id.* at 2). However, McIntyre was already too close to the shrimping boat when the malfunction occurred and had not left enough margin of error. (*Id.* at 2-3). This mistake was a violation of the Federal International Regulations for Preventing Collisions at Sea, which all vessels are obligated to follow. (*Id.* at 3). Moreover, vessel operators are required to maintain their vessels in a seaworthy condition, including maintaining and inspecting the controls. Had the proper fasteners been used for the shifter mechanism, or had a simple inspection been done, then the mechanical failure would not have occurred. Odom was of the opinion that the deficient transmission linkage made the boat unseaworthy. (*Id.*). Odom also completed a more detailed report that reached the same conclusions. (D.E. 35-2 at 1-9). In the report, he indicated that he had also reviewed the Coast Guard report on the incident. (*Id.* at 1).

Dkt. No 36 at 2-5.

The Court adopts the M&R's statement of the jurisdiction and background in this case. The Magistrate Judge described the legal standard:

### III. DISCUSSION
#### a. Summary Judgment Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). If a motion filed under Rule 12(b)(6) presents matters outside of the pleadings, the Court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Here,

because the Court must consider matters outside of the pleadings, Deep Sea's motion is one for summary judgment.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

Dkt. No. 36 at 6-7.

This Court adopts the M&R findings on the summary judgment legal standard.

The Magistrate Judge provided analysis of the liability waiver form issue:

b. Liability Waiver Forms
In its motion for summary judgment, Deep Sea argues that Claimants signed waivers releasing Deep Sea from any liability before they boarded the boat. (D.E. 29-1 at 2-4). Deep Sea argues that, although the waiver did not specifically mention negligence, the broad language waived claims regarding "any problem." (*Id.* at 9). Deep Sea contends that this language shows that the intent of the parties clearly and unequivocally was to exempt it from liability from any problem that arose during the trip, including negligence. (*Id.*). Further, Deep Sea argues that it did not have excessive bargaining power over Claimants because they were free to refuse to sign the waivers and find a different fishing service. (*Id.* at 9-10).
Claimants first respond that the waiver form did not clearly and unequivocally provide a waiver for Deep Sea's own negligence. (D.E. 31 at 4-5). They argue that the form never mentions the word "negligence" or otherwise indicates that it includes claims of negligence, which renders it insufficient to bar the claim that Deep Sea was negligent. (*Id.* at 5-7). Second, Claimants argue that the waivers are unenforceable contracts because Deep Sea breached its promise to operate in

accordance with the United States Coast Guard Regulations. (*Id.* at 9-10). Accordingly, they argue that the waivers lacked consideration. (*Id.* at 10). Deep Sea replies that the language of the waiver form speaks for itself and that Claimants failed to identify any alternative interpretation. (D.E. 35 at 1-2). Deep Sea contends that the waivers are sufficient despite the fact that they do not mention negligence. (*Id.* at 3). Finally, Deep Sea argues that the waivers were supported by consideration because Claimants were able to go on the fishing trip. (*Id.* at 3-4). Regardless, Deep Sea asserts that Claimants failed to show that it violated any Coast Guard regulations because Odom's opinions were based on the Coast Guard's investigatory reports, which are inadmissible. (*Id.* at 4-5).

Generally, applying maritime law, a contract that provides for indemnification for or release of a party's own negligence must be clearly and unequivocally expressed. *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984). A statement releasing a party from "any and all claims" is insufficient, standing alone, to include the party's own negligence. *Id.* However, an indemnity provision need not explicitly state that it includes a party's own negligence. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540-41 (5th Cir. 1986). Instead, a duty to indemnify will exist if the language of the contract reasonably indicates that the parties intended to include the indemnitee's own negligence as part of the agreement. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). In *Theriot*, the Fifth Circuit held that an agreement indemnifying a party "without limit and without regard to the cause or causes thereof or the negligence of any party" clearly and unequivocally included indemnification for the indemnitee's own negligence. *Theriot*, 783 F.2d at 540. In contrast, the Fifth Circuit concluded that a similarly worded agreement that omitted the "any party" language did not clearly and unequivocally release such claims because it did not specify whose negligence the agreement covered. *Id.* at 540-41.

Here, Claimants do not dispute that they willingly signed the waiver forms. (*See* D.E. 31 at 4-5). Thus, the issue on summary judgment is whether the forms were legally sufficient to waive Claimants' right to bring suit against Deep Sea.

Dkt. No. 36 at 6-9.

The Court adopts the M&R findings on the liability waiver legal standard.

The M&R then provided an analysis of the liability waiver at issue:

They were not. First, although not required to do so, the waiver forms do not explicitly provide that Claimants were waiving their ability to sue Deep Sea in the event that they were injured due to Deep Sea's negligence. (D.E. 29-2 at 1-2). Second, the plain language of the forms does not otherwise indicate that the parties intended to include Deep Sea's own negligence as part of the agreement. *See Corbitt*, 654 F.2d at 333. The language of the forms, which purport to cover "any problem[s] (medical, accidental, or otherwise) which occur while on the boat

or otherwise participating in the trip," is equivalent to an indemnity agreement covering "any and all claims." (*See* D.E. 29-2 at 1-2). Such language, standing alone, is insufficient to include negligence. *Seal Offshore*, 736 F.2d at 1081. Further, unlike the agreement that the Fifth Circuit found to be sufficient in *Theriot*, Deep Sea's forms did not specify whose negligence Claimants would be required to indemnify. *Theriot*, 783 F.2d at 540-41. Again, contractual language that merely includes "all" injuries is insufficient under binding Fifth Circuit precedent. *Seal Offshore*, 736 F.2d at 1081. Accordingly, because the waiver forms do not clearly and unequivocally provide for indemnification for or release of Deep Sea's own negligence, Claimants have not waived their ability to sue Deep Sea for their injuries.

Because the waiver forms are legally insufficient to release Deep Sea of its own negligence, it is unnecessary to determine whether they were supported by consideration.

Dkt. No. 36 at 9-10.

The Magistrate Judge recommended that Deep Sea Fishing's motion for summary judgment be denied. Dkt. No. 36 at 10.

## II.    LEGAL STANDARD

The Court reviews objected-to portions of a Magistrate Judge's proposed findings and recommendations de novo. 28 U.S.C. § 636(b)(1).

## III.    OBJECTIONS

Deep Sea Fishing objects to the M&R and its conclusion that summary judgment be denied. Dkt. No. 38 at 1. Deep Sea Fishing objects specifically to the application of the law to the waiver language in dispute. *Id.* Deep Sea Fishing argues that contrary to the Magistrate Judge's conclusion, the "broad language" in its waiver agreement is dissimilar to that in *Seal Offshore, Inc. v. Am. Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984), and closer to the language in *East v. Premier, Inc.*, 98 Fed. Appx. 317, 320-22 (5th Cir. 2004). Deep Sea Fishing argues that the phrase "any problem" in the waiver "refers to any cause, not any claim as the Magistrate Judge assumed." Dkt. No. 38 at 3. This distinction is important, Deep Sea Fishing argues, because the Fifth Circuit enforces release provisions that state they are releases regardless of cause. *Id.* at 4. Deep Sea Fishing relies heavily on *East* to

make the argument that its waiver language satisfies the clear and unequivocal test for releases. *See id.* at 5; 98 Fed. Appx. at 320.

## IV. ANALYSIS

The disputed document reads as follows:

"I, the undersigned, have been informed and understand that there are inherent risks and hazards associated with offshore party fishing and boating. These include, but are not limited to: EFFECT OF SUN, WIND, RAIN AND OTHER WEATHER CONDITIONS, SEASICKNESS, PITCHING AND ROLLING OF THE VESSEL, SLIPPERY DECKS, PERILS OF SEA, ACTS OF OTHER PARTICIPANTS, INJURIES FROM FISHING TACKLE AND FISH, and I hereby assume such risks.

Deep Sea Fishing, Inc. m/v Gulf Eagle, m/v New Pelican, and m/v New Kingfisher operate under and practice seamanship in accordance with United States Coast Guard regulations.

I understand that I have a duty to exercise reasonable care for my own safety and I agree to do so. I further assert that I am physically fit to fish and ride on a boat and I will not hold Deep Sea Fishing, Inc., Deep Sea Properties, Inc., m/v Gulf Eagle, m/v New Pelican, m/v New Kingfisher or their employees, agents or other associated personnel responsible if I am injured as a result of any problem (medical, accidental, or otherwise) which occur while on the boat or otherwise participating in the trip.

I also agree to allow photographs of myself, and all persons in my party, taken by Deep Sea Fishing, Deep Sea Properties and/ or any related entity to be published for any purpose and in any format. This release covers photographs taken while on site at Deep Sea Headquarters, Deep Sea Properties, Fins Grill and Icehouse, and Red Dragon Pirate Ship inclusive"

Dkt. No. 29-2 at 1.

As stated above and in the M&R, while applying maritime law, a contract that provides for indemnification for or release of a party's own negligence must be clearly and unequivocally expressed. *See Seal Offshore.*, 736 F.2d at 1081; *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir. 1992). An indemnity contract should only impose liability for losses that are expressly within its terms or when it can be reasonably inferred that the parties intended to include them. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). General maritime law has not

adopted the express negligence test which requires an indemnity provision to expressly state whether a party is to be indemnified for its own negligence. *East*, 98 F. App'x at 320.

Finally, with regard to summary judgment and contract interpretation a contract is ambiguous when its meaning is uncertain or susceptible to multiple interpretations. *Reliant Energy Services, Inc. v. Enron Canada Corp.,* 349 F.3d 816, 821 (5th Cir. 2003). A maritime contract should be read as a whole and its words given their plain meaning unless the provision is ambiguous. *Hardy*, 949 F.2d at 834.

In *East*, the contractual language in question stated the party "…shall be responsible for all claims, demands, and causes of action of every kind and character arising in connection herewith…" and further that the parties "…shall exclusively govern the allocation of risks and liabilities of said parties without regard to cause." 98 F. App'x at 320. That indemnity agreement between corporations may not explicitly say that the party's own negligence was covered, but the phrases "all claims demands and causes of action" and "without regard to cause" made such effect clear. *See id.* The same can be said of *Theriot*, where the relevant contractual language provided a party "agrees to protect, defend, indemnify and save Operator…and its joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party." *Theriot*, 783 F.2d at 540. Unequivocal language releasing liability for negligence is also stark and easily understood in other admiralty cases involving releases for water recreation activities. *See e.g.*; *Cobb v. Aramark Sports & Entm't Servs., LLC*, 933 F. Supp. 2d 1295, 1298 (D. Nev. 2013); *Olivelli v. Sappo Corp.*, 225 F. Supp. 2d 109, 117 (D.P.R. 2002); *Olmo v. Atl. City Parasail, LLC*, No. 13-4923 (AMD), 2016 WL 1704365, at *3 (D.N.J. Apr. 28, 2016).[1]

---

[1] "I AGREE NOT TO SUE ... the aforementioned parties for any injuries or damages that I might hereby receive from my participation in the parasailing activities, whether or not such injury, loss or damage results from the aforementioned parties' negligence or from any other cause." *Cobb v. Aramark Sports & Entm't Servs., LLC*, 933 F. Supp. 2d 1295, 1299 (D. Nev. 2013) "I understand and agree that neither my instructor…the facility through which I

Applying these standards to the present objections from Deep Sea Fishing, the Court finds that the words "any problem" invite more than one interpretation. The Court also finds that the release read as a whole does not clearly and unequivocally express the intent of the parties to waive action related to Deep Sea Fishing's own negligence. *See* Dkt. No. 29-2 at 1. Deep Sea Fishing cites no authority for the proposition that "any problem" means the same thing as "any cause." *See* Dkt. No. 38. Indeed, "problem" is an open-ended word with many definitions, none of which are clear in the context of this document. *See id.* In the context of the release as a whole, it is unclear what is being disclaimed and to what extent. *See Theriot*, 783 F.2d at 540-41. The passage begins discussing the physical fitness of the passenger and then goes into an agreement to not hold parties "responsible" for an injury as a result of "any problem (medical, accidental, or otherwise)." Dkt. No. 29-2 at 1. A release of an 'accidental problem' or an 'otherwise problem' is ambiguous language that invites multiple interpretations. It is not similar to the clear and unequivocal language used in *East* that Deep Sea Fishing cites. *See East*, 98 F. App'x at 320; *Seal Offshore.*, 736 F.2d at 1081.

## V.   CONCLUSION

After independently reviewing the filings, the record, and applicable law the Court **ADOPTS** the M&R and **DENIES** Deep Sea Fishing's motion for summary judgment.

It is so **ORDERED.**

SIGNED this 25th day of September, 2019.

Hilda Tagle
Senior United States District Judge

---

received my instruction…nor any of their respective employees, officers, agents or assigns, (hereinafter referred to as "Released Parties") may be held liable or responsible in any way for any injury, death, or other damages to me or my family, heirs, or assigns that may occur as a result of my participation in this diving class or as a result of the negligence of any party, including the Released Parties, whether passive or active." *Olivelli v. Sappo* Corp., 225 F. Supp. 2d 109, 117 (D.P.R. 2002); "To waive and release any and all claims based upon negligence, active or passive, with the exception of intentional, wanton, or willful misconduct that I may have in the future…" in a Parasailing release of liability form. *Olmo v. Atl. City Parasail, LLC*, No. 13-4923 (AMD), 2016 WL 1704365, at *3 (D.N.J. Apr. 28, 2016).